Filed 3/14/22  P. v. McGeough CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C091175 |
| Plaintiff and Respondent, | (Super. Ct. No. 17F7066) |
| v. | |
| SEAN MICHAEL MCGEOUGH, | |
| Defendant and Appellant. | |

A jury found defendant Sean Michael McGeough guilty of first degree murder of his sister.  The trial court sentenced him to 25 years to life in state prison.  On appeal, defendant contends that the trial court erred in admitting evidence of his prior uncharged attack on a former girlfriend.  We affirm the trial court's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant's sister, Stephanie, was found dead in her apartment.  Her decomposed body was concealed by a pile of clothes and household items, her head was covered by a plastic bag, and a nylon "strap like ligature" with plastic buckles was "wrapped multiple

1

times around [her] neck" with a "partial knot." The fans were on, the air conditioner unit was running at 60 degrees, and there were burnt out candles and air fresheners in the apartment.

Defendant had been in Stephanie's apartment before and after her death. After Stephanie's death, defendant stole her car and drove it to Nevada, where he met C.J. and told him that Stephanie was an "evil fat bitch." He also withdrew money from Stephanie's bank account repeatedly and said in a phone call after Stephanie's death that "he was going to kill himself and take his mom and his sister with him."

Stephanie suffered from multiple mental issues and also was suicidal at times. Just before her death, she told her landlord that she was planning to move to Florida and gave notice to terminate her lease. Investigators found two journals in her apartment. The older journal, found in a closet, documented Stephanie's history of mental illness, including depression, anxiety, posttraumatic stress disorder, and suicidal thoughts, as well as harsh words about defendant, calling him a "heartless garbage blood weasel," "white trash yellow loser[]," and "demon." The more recent journal was found on the kitchen table and included a to-do list in anticipation of Stephanie's move. It did not discuss suicide or mental problems.

The pathologist testifying for the People concluded that the cause of death was asphyxia due to ligature strangulation and a plastic bag over the head. But he was unable to determine whether the death was homicide or suicide. Defendant's pathologist, on the other hand, opined that this case "more comports with" suicide given the sister's "prior history of suicide ideations and attempts." She contended that one cannot assume a crime had been committed based on the mere fact that Stephanie's body was covered. According to her, it was not uncommon for people to cover up the body of someone they know even if the death was natural or suicide.

Defendant's former girlfriend Y.B. testified that defendant once pushed her down on a bed and strangled her with his hands when he was agitated. Y.B. soon escaped

defendant's grasp, but she was uncertain whether it was because she successfully fought back or if defendant decided to let her go. Y.B. admitted that she had memory problems and could not recall the events leading up to the incident, whether she called the police following the incident, or whether defendant was arrested for the incident.

The jury found defendant guilty of first degree murder (Pen. Code, § 187, subd. (a)) and the trial court sentenced defendant to a term of 25 years to life in state prison. Defendant timely appealed.

## DISCUSSION

Defendant argues on appeal that the trial court abused its discretion in allowing Y.B. to testify that he strangled her with his hands approximately five years prior to Stephanie's death. He contends that this incident: (1) is too dissimilar to the charged offense to warrant admission under Evidence Code section 1101,[1] and (2) does not survive the section 352 balancing test.[2] We disagree.

### Additional Background

The People moved in limine to introduce testimony of two of defendant's former girlfriends, L.L. and Y.B. L.L. would testify that defendant used a ligature to strangle her during a fight shortly after they broke up in 1998, and Y.B. was to testify that defendant used his hands to strangle her in 2012. At the motion in limine hearing, the trial court excluded L.L.'s testimony, reasoning that it was too remote in time and therefore failed the section 352 balancing test. But the trial court decided to admit Y.B.'s testimony because "they're close enough" and "even though arguably . . . there are some

---

[1] Further undesignated statutory references are to the Evidence Code.

[2] In the trial court, the People also relied on the doctrine of chances as a basis for admissibility. On appeal, defendant contends that the evidence was not admissible under this doctrine. The trial court did not rely on this doctrine to find the evidence admissible. We therefore need not address this issue.

differences, I think that it relates too close in time so that the substantial prejudice is clearly outweighed by the substantial benefit that we'll receive by having that." The trial court further concluded that Y.B.'s testimony "go[es] to prove intent, lack of mistake or accident. A common plan or scheme is one of the words. But here we use pattern." At the subsequent section 402 hearing, the trial court instructed the People to limit Y.B.'s testimony pursuant to an off-record discussion between the court and counsel, then allowed Y.B. to testify without further reasonings. Y.B.'s testimony took only a portion of an afternoon session in an eight-day jury trial. The trial court instructed the jury to "not consider this evidence for any other purpose except for the limited purpose of deciding whether the defendant's alleged actions were not the result of mistake, accident, or suicide."

*Admissibility of Prior Misconduct and Standard of Review*

Section 1101, subdivision (b) allows admission of evidence of other acts by a defendant to "prove some fact . . . other than [the defendant's] disposition to commit such an act," including to show the absence of suicide. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1377.) Because evidence of uncharged offenses is " 'so prejudicial,' " reviewing courts will conduct " 'extremely careful analysis' " in their review. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*); *People v. Clark* (2021) 62 Cal.App.5th 939, 957.) This analysis includes: "(1) the materiality of the facts sought to be proved; (2) the tendency of the uncharged crimes to prove or disprove the material fact (i.e., probative value); and (3) the existence of any rule or policy requiring the exclusion of relevant evidence (i.e., prejudicial effect or other [section] 352 concern)." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 238 (*Hendrix*).)

Under section 352, the trial court has discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Therefore, even if the

4

uncharged offense is admissible under section 1101, it must still be excluded if its probative value is outweighed by section 352 concerns. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

On appeal, we review the trial court's ruling on the admissibility of evidence under sections 1101 and 352 for abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 491; *People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.) We further review the evidence in the light most favorable to the trial court's ruling. (*People v. Edwards* (2013) 57 Cal.4th 658, 711.) The trial court's exercise of discretion will not be set aside unless it is so arbitrary, capricious, or patently absurd that it results in a miscarriage of justice. (*People v. Jackson* (2016) 1 Cal.5th 269, 321.)

*Analysis*

First, the materiality requirement is satisfied only if the fact sought to be proved or disproved is either an ultimate fact or an intermediate fact from which the ultimate fact may be inferred. (*Hendrix, supra*, 214 Cal.App.4th at p. 239.) Elements of the offense or defense are ultimate facts. (*Ibid.*) The fact sought to be proven here was the absence of suicide. It was an intermediate fact from which inference that defendant killed Stephanie could be drawn. Defendant's attempt to prove suicide at trial also made this issue material.

Second, our Supreme Court has held that "[e]vidence tending to demonstrate the cause of death was relevant to demonstrate that a murder—and not a natural death—had occurred." (*People v. Catlin* (2001) 26 Cal.4th 81, 146.) Thus, where defendant tried to prove that the victim had committed suicide, evidence of defendant's other crimes was admissible to disprove the defense theory. (*People v. Spector, supra*, 194 Cal.App.4th at p. 1377.) This also applies in cases that did not involve a premeditated crime. (*Id.* at p. 1376.)

Moreover, the uncharged offense must be sufficiently similar to the charged offense in order to be admissible, but the degree of similarity required varies depending

5

on the purpose for which the evidence is presented. (*People v. Jones* (2011) 51 Cal.4th 346, 371.) The least degree of similarity is required to show criminal intent by negating accident or mistake. (*Ewoldt, supra*, 7 Cal.4th at p. 402.) For this purpose, the uncharged misconduct need only be "sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid.*)

In the present case, evidence that defendant had previously strangled Y.B. was relevant to the cause of death in the charged crime because it tended to corroborate the other evidence that this was not a suicide. (*People v. Catlin, supra*, 26 Cal.4th at p. 146.) The victims of both the uncharged misconduct and the charged offense were women close to defendant; both incidents involved strangulation, either manually or by ligature; both victims had a strained relationship with defendant at the time of the incidents; and the uncharged offense happened only approximately five years prior. We conclude, therefore, that the evidence of defendant's prior attack on Y.B. shares sufficient common features with the charged offense to support the inference that Stephanie did not commit suicide.

Third, even if evidence of prior misconduct has substantial probative value, it may still be excluded if its probative value is substantially outweighed by the probability that its admission would "necessitate undue consumption of time" or "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352; *Hendrix, supra*, 214 Cal.App.4th at p. 246.)

Here, the potential of prejudice was low because defendant's attack on Y.B. was not more inflammatory than the charged offense, as it only lasted for a short amount of time and did not result in any injuries. (*Ewoldt, supra*, 7 Cal.4th at p. 405 [the potential for prejudice decreases where the testimony describing the defendant's prior misconduct was no stronger and no more inflammatory than the testimony concerning the charged offenses].) The likelihood of evoking an emotional bias against defendant was diminished because Y.B. admitted at trial that she had limited memory of the incident and

6

was unable to provide details about the circumstances surrounding the attack. To the extent defendant contends that Y.B.'s memory problems made her testimony confusing, nothing in the record suggests the jury was confused by Y.B.'s testimony. Defendant's attack on Y.B. was also not too remote in time, as it took place only approximately five years prior to Stephanie's death. The jury was further instructed to consider this evidence for the limited purpose of whether there was an absence of suicide. (*Hendrix, supra*, 214 Cal.App.4th at p. 247 ["A limiting instruction can ameliorate section 352 prejudice by eliminating the danger the jury could consider the evidence for an improper purpose."].) Finally, the People did not spend additional time locating Y.B. and her testimony took only a portion of an afternoon session in an eight-day trial. Considering these factors, we conclude the probative value of Y.B.'s testimony was not substantially outweighed by the substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

## DISPOSITION

The judgment is affirmed.


    /s/
RAYE, P. J.

We concur:


  /s/
BLEASE, J.


  /s/
KRAUSE, J.